now in the case of the United States against Carrazco-Martinez. Mr. Altman. Thank you, Your Honor, and may it please the Court. My name is Adam Altman, and I represent the appellant in this matter, Antonio Carrazco-Martinez. Your Honors, we're asking that the Court vacate Mr. Carrazco-Martinez's convictions for two primary reasons, for at least two reasons today. First, the District Court gave a non-pattern jury instruction that was needlessly confusing in violation of Mr. Carrazco-Martinez's Fifth and Sixth Amendment rights. Why do you have to argue the Constitution? Why don't you just say it was a confusing jury instruction? Well, we do think that it was a confusing jury instruction, Judge, but we also think it violated the Fifth and Sixth Amendment rights under Winship, of course. He's entitled to, the government must prove every element of the charge beyond a reasonable doubt, and then in Illinois v. Pope, the Supreme Court said that to instruct the jury incorrectly on an element of the crime denies the defendant his Sixth Amendment right to trial by jury. I just don't understand it. If you instruct incorrectly on an element of the crime, then you violated the statute, and everything follows. It's a rule. You're not supposed to consider the Constitution unless all other grounds of decision are exhausted. You seem to start with the Constitution rather than get there only when you must. Well, Judge, I agree with your premise there, and we don't... I'm sure the committee that drafts these instructions would be happy at the thought that not to give a pattern instruction thereby violates the Constitution, but I don't think that was the goal in drafting these instructions. Understood, Judge, and we agree we don't necessarily need to get to the Constitution. No, you don't, and if you don't need to, then you don't. Understood. Can I ask you to shift, if you've answered Judge Easterbrook's question, which I think you have, to the other two issues? Yes, Judge. Okay. Go ahead. Yes, so the other two issues are really combined. We're arguing that the district judge erred by not granting our motion to express evidence that the government obtained through unreasonable searches and seizures in violation of Mr. Carrasco-Martinez's Fourth Amendment rights. I would like to focus my argument today on the first issue, the jury instruction issue, just because we think that the Fourth Amendment issue is rather straightforward, the jury instruction issue... Well, then let me ask you a specific question. Sure. Can you fill out your argument on good faith for us? Why was the district court wrong to apply the good faith exception and address both cell site simulators separately from the CCTV on both? Because they're situated kind of differently. Sure, so we think that with regard to the CCTV argument, good faith should not apply because there were traditional investigative techniques that were working, that the government was using. They had gotten a raft of information that they needed to move forward with their investigation, to prosecute this case, without taking the step of breaking into Mr. Carrasco-Martinez's home and putting closed circuit television cameras in it. So we think for that reason, good faith should not apply to that point. And then in terms of the Stingray device that the government used, our argument is that the government did not properly enumerate in its warrant affidavit what exactly it was going to use. This is a newer technology. The courts are still developing their jurisprudence about the limits of using such a device. And keep in mind, Your Honors, this is a device that not only can intercept data, but it can intercept conversations, text message conversations. It can intercept content. Is it your position we should affirmatively state? I mean, we haven't, as you all noted, stated whether good faith applies with regard to Title III. Then we've got the issue of how much under TORRAs we're analogizing CCTV to Title III wiretaps. Where are you asking us to go to undo the district court's district good faith determination? Yes, Your Honor. I think that the court should apply the good faith rule to the Title III order. And I think that there's enough there to overturn the convictions on that. But I'd like to move to the first issue that we discussed, the jury instruction issue. And the particular instruction that we have issue with is what the government offered as its instruction number 28. And that instruction provided in short that the government need not prove any specifics with regard to drug quantity or weight. Now, our problem there that is in the context of the language of the indictment, which of course the district court read to the jury during instructions, and in the context of the very next instruction, number 29, this instruction, 28, created unreasonable confusion. And I think just a quick survey of how those three different statements were at odds with each other will help highlight why we think there's a problem here. And starting with the district judge's recitation of the indictment, through that it's telling the jurors that Mr. Carrasco Martinez was charged with possession with intent to distribute five kilograms or more of drugs and that he conspired to do so. That's the indictment, five kilograms or more. But then through instruction 28, the judge is telling the jurors, effectively, you can go ahead and forget about that five kilogram number because really the government doesn't have to prove anything with regard to drug quantity and weight. And then in instruction 29, of course, the judge is saying, telling the jurors that if you do find Mr. Carrasco Martinez guilty, go ahead and make that special finding. So it's the three taken together that we think causes a lot of confusion here. And in our opening brief, we couched part of our argument in terms of instruction 28 violating the Apprendi-Aleen rule. And we don't think that a stretch here because, again, in the context of the language of the indictment, instruction 28 is running in contradistinction to that because it's telling the government that it's telling the jury that the government need not prove anything about drug weight and quantity. And I think that this court's decisions after Aleen are also consistent with that principle. In United States v. Paulette, for example, this court said that where the Section 841B enhancement applies, the question of drug quantity must be submitted to the jury and proved beyond a reasonable doubt. Now, the government asserts in its responsive brief that we're somehow misreading or misapplying Paulette. But the court said unequivocally that where the 841B enhancement applies, the drug quantity is not a sentencing factor. It's an element of the offense charge. But apart from our Aleen argument, our Apprendi-Aleen argument, there's a much simpler argument. And that's that the instruction was simply confusing, plain and simple. And we know that it was confusing because at the jury instruction conference, when we objected to instruction number 28, the prosecutor's response to that was that in conjunction with instruction 28, the indictment was confusing. And the reason that it was confusing is because, quote, we're required to make it confusing. That's what the prosecutor said. And then in response to that, the district judge said that she was, quote, really reticent and that she was worried about applying this instruction. And the district judge went on to say, ask the prosecutor, is this jury instruction going to cause confusion? And is it going to cause good confusion or bad confusion? Now, what does that possibly mean in the context of jury instructions? How could a jury instruction create good confusion? And that highlights another principle that is at play here, if it pleases the court. And that is that the very purpose of jury instructions is to educate the jury to point out crucial points of law that they need to decide the case. So for a district judge to instruct the jury on something that it is really reticent to give and thinks it is creating good confusion or bad confusion, whatever that means, patently contradicts the function that jury instructions are supposed to achieve. And I see I'm close to my time here. If I could just reserve the remainder of my time for rebuttal, I'd like to go ahead and do that. Thank you. Ms. Schwartz. Good morning, Your Honors, and may it please the court, Julia Schwartz on behalf of the United States. I'll start first with the jury instructions where counsel left off. The district court in this case correctly instructed the jury that the jury did not need to find a specific drug quantity as an element of the offense. This was consistent with this court's case law, which holds that drug type and quantity are not considered elements of an 841 or 846 offense, even where those same facts have to be found by a jury to enhance a sentence. The instructions were consistent with the law and were not confusing. And, in fact, Instruction 28 makes good sense and is fully consistent with the pattern in jury instruction concerning the special verdict, which was Instruction 29, I believe, which is framed in the if-then. If you do find guilty on all the elements of the count, then you must turn to the findings concerning drug weight. But, Ms. Schwartz, you can't blame Mr. Carrasco-Martinez for being here now because you have the government, the defense, and the court all expressing confusion. Even if, as you say, in hindsight you look back, it's not confusing, why isn't that enough to show the potential for jury confusion for us here? Your Honor, the confusion referenced in the transcript at the pre-trial conference, or at the instruction conference, pardon me, concerned what the government viewed as the minimum of cocaine, one kilogram or more of heroin. And that was going to go back to the jury in redacted form. So the confusion that the government's counsel was referring to was the jury will get this indictment and wonder what to make of these specific kilogram quantities, which we haven't heard in specific form in the trial evidence, and how do we unpack that? So really, the added instruction, Instruction 28, helped to dispel that confusion. When you're thinking about the elements of the offense, the jury did not need to think about drug quantity. Only once a reasonable doubt finding had been made for each element could the jury turn to drug quantity. So based on that, the jury instructions were not confusing. And an additional reason we know there was no confusion here and any error would be the fact that the jury did indeed make that finding, filled out the special verdict form, had no issue making the finding. So that is another basis to affirm. Can you shift over to good faith, which is what I was talking with Mr. Altman about? Because as you know, we haven't quite staked out a side in a circuit split on whether good faith applies in the Title III context. Of course, we're not in the Title III context here, only by specific analogy, I guess, under Do we need to stake out a position in this case? And if so, why? And what should the position be? Turning to the CCTV then, this court does not need to stake out a position on the circuit split concerning whether the good faith exception applies to Title III orders, or orders by analogy, because that issue has been waived, both in the district court and in this court. Council conceded that that doctrine does apply. And there was not legal briefing in the district court concerning that circuit split and which side the Seventh Circuit could land on. So I think based on waiver principles, this court should assume that good faith applies under Title III, and then can turn to the factual question of whether there was sufficient basis in the record to find good faith reliance on that CCTV order. If the court is inclined to address that legal question of whether good faith applies under Title III, the government thinks the court should side with those decisions that have found the good faith applies. That includes, for example, the Eighth Circuit, the Eleventh Circuit, and the Fourth Circuit. The Eighth Circuit, in particular, and more, addressed the legislative history and the legislative intent expressed to incorporate Fourth Amendment principles, which would include good faith, Your Honor. That said, for the CCTV order, on the factual finding that the district court made, there was ample basis to make that finding of good faith. The lengthy affidavits set forth in 17 pages in one and 18 pages in the re-up, ample basis for a finding of necessity, and outlined all the other law enforcement techniques that were utilized and expressed the need to get on the inside, to get into the stash house garage, to see how the conspirators were working with one another, what were they doing in the garage. This court's case law has found that it doesn't need to be, the CCTV doesn't need to be an investigative technique of last resort, but simply it can't be the first step, and law enforcement must go through other investigative steps in order to demonstrate necessity, which law enforcement agents amply did here, and relied in good faith on the court's order. Turning now to the cell site warrant in this case, the district court properly denied defendants' motion to suppress evidence derived from a cell site simulator, which was used to identify one of defendants' cell phones. The record abundantly supported the court's application of the good faith exception to exclusionary rule, and in addition, the warrant complied with the Fourth Amendment. It was supported by probable cause, and it outlined the narrow manner in which law enforcement intended to use the simulator. Now, counsel... Where all the capabilities of the cell site simulator, because the cell site simulator can do a lot of different things, and the government here, you say, oh, we only wanted to identify the identifying number for the phone number, or the phone number itself. So were all the other capabilities for cell site simulators disabled somehow, or was it just honor system on the part of the agents that will only use the cell site simulator in this narrow fashion? The affidavit outlined the manner in which it would be used by explaining that law enforcement would use the cell site simulator to try to detect the number... So I know what the affidavit said. Sure. Were all those other capabilities disabled, or was it just up to the agents to do what they said they would do in the affidavit? Based on the record that was presented to the district court, those potential capabilities, I should say, for example, I know there's been discussion that there might be the ability to intercept content. Those capabilities were disabled. That's Department of Justice policy. The DEA report submitted in the district court outlined in some detail the way the agents used the cell site simulator in this case. And all they did was turn it on for six brief moments over a two-day period to find location information of surrounding cell phones at that moment in time, and then after deleted all other numbers apart from the common number that was determined to be defendants. So based on the record, there were no contents of any communications gathered. And in addition, that supports a finding of good faith. There is no evidence that suggests that law enforcement expanded beyond what was authorized in the warrant or did anything more. I should also note, Your Honor, that while there is some literature and Judge Wood's dissent in Patrick does note that cell site simulators may have this capability of intercepting content, that certainly wasn't done in this case and in the typical case in which a cell site simulator is used. I am not aware of a cell site simulator ever having downloaded content. And per policy of the Department of Justice, cell site simulators are not to be configured to intercept content. Speaking of typical, back to CCTV, how common is that? Because we don't have a lot of cases on television surveillance. I mean, the fact that we're still looking to Torres 30, 40 years later suggests. So is it being used widely by agents and just not being challenged here in the Seventh Circuit? It doesn't arise. Or is it indeed rare and the government is asserting in a case like this it was absolutely necessary? Your Honor, I'm not aware of how extensive it is used. I would say based on experience, it's relatively rare, not the most common of investigative techniques. That said, the Seventh Circuit is not the only court of appeals to have upheld video surveillance in a similar manner and to have held that Title III's strictures generally map on to video surveillance. So, for example, the Fifth Circuit and the Ninth Circuit and the Tenth Circuit have all reached similar conclusions. And I think there's no basis in this case to revisit Torres, which understandably puts guardrails akin to Title III on the use of video surveillance. In this case, all of those requirements were satisfied before the CCTV was installed. Necessity was demonstrated, which is the primary basis for the appellant's brief on appeal. So, in that sense, Your Honor, there's no basis to reconsider Torres in this case. Is the intrusiveness of a surveillance device something that a judge can consider when considering the necessity factor? In other words, looking at the totality of the circumstances. Is that something that the judge can and should balance? Your Honor, by applying Title III standards, I think, and requiring necessity, which is of course distinct from a Fourth Amendment search warrant, there's already this heightened standard. The case law cited in defendant's brief, in the government's view, does not stand for the proposition that there should be a sliding scale based on the level of intrusion. Those cases do say that video surveillance inside a home is intrusive, and that is why we are applying Title III standards. None of the cases that the government has reviewed or that were cited in the brief support anything more heightened than that. If there are no further questions, the government asks that this court affirm the conviction in this case. Thank you, Ms. Schwartz. Anything further, Mr. Altman? Thank you, Your Honor, and may it please the court again, just a few points very briefly. With regard to the stingray device, Your Honor, inquired as to whether the government is supposed to disable certain functions or just go on the honor system, how that works. And the answer to that question is we don't know whether they're disabling anything or not, because the government is not going to proffer what information they've collected from the stingray device. So the only way we can challenge that is to say that this thing is overbroad, and until there are sufficient safeguards to use something like this, the government shouldn't be using it. We can't take them on their good faith that they're not collecting vast amounts of information. And second, with regard to the necessity— Isn't this something on which you could get discovery? We asked for extensive discovery on this, Your Honor, and the district judge granted some of that, denied some of that. I don't understand your brief to be contesting that order. Well, Judge, we were asking the district court to suppress the evidence altogether, and we're asking this court to vacate on that basis. All right. Thank you, Mr. Altman. We appreciate your willingness to accept the appointment in this case and your assistance to both court and client. Thank you, Your Honor. The case is taken under advisement. Thank you.